FILED
3/10/2020
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT
PK

IN THE UNITED STATES DISTRICT COURT
FOR NORTHERN ILLINOIS

| | |
|---|---|
| J. STOKES, ) | CASE: 19cv5993 |
|     PLAINTIFF, ) | JUDGE |
| v. ) | JUDGE |
| WEXFORD HEALTH SOURCES, INC., ) | |
| ILLINOIS DEPT. OF CORRECTIONS, ) | |
|     DEFENDANT. ) | |

## COMPLAINT FOR MONETARY RELIEF

NOW COMES Plaintiff Stokes, by counsel, and files this complaint. Plaintiff states as follows through counsel:

## JURISDICTION & VENUE

(1) Jurisdiction of this court arises under 28 U.S.C. §§1331, and 42 U.S.C. §2000e-2 and 3(a); and the First Amendment to the U.S. Constitution (42 U.S.C. 1983 and for fees by section 1988).

(2) Venue is had through 28 U.S.C. § 1391. Defendants are residents of Illinois in which the U.S. District Court for Northern Illinois is located; and, a substantial part of the events or omissions giving rise to the claims herein occurred in this district.

## PARTIES

(3) Plaintiff J. STOKES is a legal adult and a resident of Will County, Illinois. Plaintiff was harmed by the Defendants in Livingston County, Illinois.

1

(4) Defendant Wexford Health Sources Incorporated, the employer of Plaintiff at all relevant times, is located at 37 W 755 IL-38, St. Charles, IL. Defendant harmed Plaintiff in Livingston County, Illinois.

(5) Defendant Illinois Department of Corrections is a state agency with a principle place of business of 1301 Concordia Ct, Springfield, IL 62702.

## FACTS

( 1 ) Plaintiff is female.

( 2 ) Plaintiff is a credentialed mental health treating professional.

( 3 ) In 2018, Plaintiff was employed by Defendant Wexford as a "mental health worker. Her duties included treating mental health issues of persons incarcerated in the Illinois Department of Corrections (IDOC) facility at Pontiac.

( 4 ) Plaintiff performed duties for Wexford at the Illinois Department of Corrections site in Pontiac, Illinois.

( 5 ) Defendant IDOC exercised significant control of and over Plaintiff. Pursuant to the "economic realities of the relationship and the degree of control the IDOC exercised over Plaintiff, IDOC was too an employer of the Plaintiff.

( 6 ) Plaintiff was treated less favorably by Defendants because she is a woman (sex discrimination).

( 7 ) Persons not female were treated more favorably by Defendants.

( 8 ) Plaintiff was sexually harassed and subjected (by both Defendant Wexford and the IDOC) to a Hostile Work Environment. To include by way of an unreasonable response of Defendant Wexford to sexual harassment… and sex discrimination (see *Burlington Industries, Inc. v. Ellerth*, 524 US 742 (1998). *Faragher v. Boca Raton*, 524 US 775 (1998).

( 9 ) She was subjected to such environment because her sex is female and such misconduct was in pursuit of sexual harassment and retaliation.

( 1 0 ) The hostile work environment was serious and pervasive.

( 1 1 ) The hostile work environment was both in the Wexford workplace and workspace (space as opposed to place) as it was in the IDOC workplace and space.

( 1 2 ) The following include the bases for the hostile work environment claim:

    a. Plaintiff was repeatedly, as in daily, harassed and falsely accused by IDOC supervisors of wearing sexually suggestive attire;

    b. Plaintiff was repeatedly, harassed and falsely accused by IDOC supervisors of using her breasts to arouse prisoners, when the Defendant was aware of Plaintiff's medical condition which caused a larger appearance of the breasts, as well, that Plaintiff simply happens to have large breasts;

c. Plaintiff was repeatedly referred to as "Nipple Girl."

d. Plaintiff complained to Wexford and IDOC wanting the harassment to stop; however, Wexford stood by and did nothing as IDOC did nothing.

e. Plaintiff was repeatedly told by IDOC supervisors that her "N_ _ _ _ _ _s"[1] were arousing prisoners and causing them to behave disruptively. Defendant Wexford acquiesced to these positions by its inaction; and,

f. An IDOC supervisor falsely accused Plaintiff of wearing a crop top shirt in the workplace. Plaintiff complained to Wexford and IDOC wanting the harassment to stop; however, Wexford stood by and did nothing although it knew Plaintiff had not worn a crop top shirt in the workplace.

g. Plaintiff was repeatedly subjected to delayed entrance to areas of the jail, sometimes for minutes. (Each area of the jail has a series of steel, "lock out" doors. Each requires another person (e.g., in a control booth) to open one or more doors. In Plaintiff's case there were repeated delays disallowing her prompt access to areas of the jail where she needed to perform her duties. In other words, Plaintiff would be locked in a holding area and not permitted to leave in a reasonable amount of time.

---

[1] Referring to a part of her breasts. Redacted because the instant is a court filing.

   h. When Plaintiff complained of the aforementioned, as well of the above described sexual harassment, she was subjected to retaliation by IDOC which included the delayed entrances.

(13) But for Plaintiff being female, she would not have been treated in violation of Title VII.

(14) Plaintiff complained to Defendant Wexford as well as the IDOC of the aforementioned.

(15) Wexford expressed to Plaintiff as a basis of it not talking reasonable steps to stop the harassment, that it did not want to "rock the boat" –-that it did not want to anger IDOC, since to anger IDOC could cause IDOC not to renew the contractual relationship with IDOC.

(16) Defendant Wexford was apparently so fearful of losing its contract with IDOC that it did nothing to try to protect the Plaintiff, rather continually sent Plaintiff to the IDOC facility at Pontiac. Wexford acquiesced and thereby contributed to, and participated in, as to the treatment to which the Plaintiff was subjected.

(17) Plaintiff also complained to Wexford and IDOC of mistreatment of prisoners by one or more guards.

(18) Plaintiff reasonably believes that because of the close time proximity of her complaints of this sort, and the adverse action of IDOC staff members frustrating her movement in the jail, that such is indicative that the adverse action was retaliatory for complaints of prisoner mistreatment as

well as her vocal and frequent opposition to sexual harassment (expressed to both Wexford and the IDOC), supra.

(19) Wexford was on notice by Plaintiff, that Plaintiff was being harassed as to her breasts…, and her complaints about prisoner mistreatment, but did not take reasonable steps to stop the harassment.

(20) Because of Wexford's inaction, prisoners eventually joined IDOC supervisors in making quips and comments about Plaintiff's breasts, and in particular her breasts as well as other sexual comments by staff and prisoners, all of which became so overwhelming (joined with the delayed door entries, sometimes minutes in length) that Plaintiff was forced to resign her position for which she avers a constructive discharge claim. Plaintiff complains that in contravention to 2000e-3(a), Respondents retaliated against her for her protected activity of having complained of sex discrimination, and sexual harassment. Such conduct made for a hostile work environment which altered Plaintiff's terms and conditions of employment.

(21) Plaintiff has filed this instant complaint within 90 days of receiving a right to sue letter from the EEOC.

### COUNT I: 42 U.S.C. § 2000e-2 CLAIM
### (Sex Discrimination, Sexual Harassment, Hostile Work Environment, & Constructive Discharge)

(1) Plaintiff repeats, re-alleges and incorporates by reference, the allegations in all preceding paragraphs of this Complaint, especially the

section entitled "FACTS," with the same force and effect as if herein set forth. The facts section is to be read as Paragraph 1 of this count.

(2) Defendants discriminated against Plaintiff in terms and conditions of employment because she is female and by way of sexual harassment, in violation of Title VII, 42 U.S.C. § 2000e-(2)(a), by engaging in, tolerating or failing to prevent the sex-based harassment and sexual harassment, alleged herein and by failing to take affirmative action to correct and redress these unlawful employment practices. The conduct made for the aforementioned, supra., described material adverse actions taken against Plaintiff by Defendant Wexford and the IDOC.

(3) Defendants subjected Plaintiff to serious and pervasive sex discrimination and sexual harassment.

(4) "Unwelcome" sexual conduct constitutes sexual harassment when "submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment," 29 C.F.R § 1604.11(a)(1).

(5) Plaintiff was subjected to harassment by way of a hostile work environment.

(8) Plaintiff perceived the conduct in issue to be offensive and sexually abusive.

(9) The conduct referenced above (and in the Facts section) occurred because of Plaintiff's sex.

7

(10) The conduct suffered by Plaintiff was sufficiently pervasive and severe to alter --and did alter—terms and conditions of Plaintiff's employment as well as created an abusive working environment to include Defendants having taken material adverse actions against Plaintiff.

(11) Defendants were negligent because they knew of but failed to prevent or stop misconduct by their employees and inmates from engaging in harassment that caused harm to the plaintiffs and others

(12) Defendants retained and failed to discipline the "unfit" employees after becoming aware of their misconduct.

(13) Defendants did not discipline inmates after becoming aware of their misconduct nor did Defendants attempt to stop inmates from engaging in the conduct.

(14) The plaintiff alleges that defendants are directly liable for failing to take action to prevent or remedy the systemic verbal harassment, abuse, and mistreatment Plaintiff suffered at the hands of supervisors and staff (e.g., referring to her as "Nipple Girl").

(15) Plaintiff was constructively discharged by Defendant's actions.

(16) Wexford, the employer, acted in a way that "would" and did communicate to a reasonable worker (esp., Plaintiff Smith) that her employment would be terminated imminently *and* that the employee's working conditions had become intolerable.

(17) IDOC, the employer, acted in a way that "would" and did communicate to a reasonable worker (esp., Plaintiff Smith) that her employment would be terminated imminently *and* that the employee's working conditions had become intolerable.

(18) Defendant Wexford's conduct (to include omissions) was and is the proximate cause and substantial factor in causing Plaintiff's harm.

(19) Defendant Wexford's conduct in not removing Plaintiff from the Pontiac site was the proximate cause and substantial factor in causing Plaintiff's harm.

(20) Plaintiff suffered harm to include pain and suffering; stigma plus damages; humiliation;[2] and, stress (garden variety).

(21) Plaintiff was detrimentally affected by the conduct and such conduct would have detrimentally affected a reasonable woman.

(22) Plaintiff complained to Defendants of the misconduct.

(23) Defendant failed to take reasonable, prompt, and appropriate corrective action.

(24) The harassment directed at Plaintiff was either intended to cause her distress (stress) or was perpetrated with malice or reckless indifference to the likelihood that it would cause such distress.

(25) Plaintiff suffered harm to include deprivation of constitutional rights, pain and suffering; stigma damage; humiliation; stress; and legal fees.

---

[2] Any use of the term humiliation in the complaint is inclusive of damage to a woman's dignity.

(26)	Defendants' conduct was and is the proximate cause and substantial factor in causing Plaintiff's harm.

WHEREFORE, and that there is sought, judgment against all Defendants for actual, general, special, compensatory damages in the amount of $100,000.00, plus punitive damages and further demands judgment against Defendant for the costs of this action, including attorney's fees, and such other relief deemed to be just and equitable.

### COUNT II: 42 USC 2000-3(a) VIOLATIONS
### (Retaliation based on sex, protected speech, etc. Sexual Harassment, Hostile Work Environment & Constructive Discharge)

(1)	Plaintiff repeats, re-alleges and incorporates by reference, the allegations in all preceding paragraphs of this Complaint, especially the section entitled "FACTS," with the same force and effect as if herein set forth. The facts section is to be read as Paragraph 1 of this count.

(2)	Plaintiff engaged in Constitutionally and Title VII protected activity when she complained to Wexford and IDOC.

(3)	Defendant was aware of the aforementioned protected activity before its having retaliated against Plaintiff, by doing nothing to stop the harassment, rather worrying that to take action would anger the IDOC.

(4)	Defendant knew or had to know that the misconduct in the work environment would become so overwhelming and intolerable for the Plaintiff that she would have to resign because of the hostile work environment.

(5)     Plaintiff did suffer harm and incurred damages.

(6)     Plaintiff proximately caused the harm, injury, and damages.

(7)     Plaintiff suffered harm to include deprivation of rights, pain and suffering; stigma; loss of income; humiliation; and garden variety stress.

WHEREFORE, and that there is sought, judgment against Defendants for actual, general, special, compensatory damages in an amount in excess of $200,000.00, and further demands judgment against Defendant for the costs of this action, including attorney's fees, and such other relief deemed to be just and equitable.

### COUNT III: First Amendment Violation
### Applies to IDOC

(1)     Plaintiff repeats, re-alleges and incorporates by reference, the allegations in all preceding paragraphs of this Complaint, especially the section entitled "FACTS," with the same force and effect as if herein set forth. The facts section is to be read as Paragraph 1 of this count.

(2)     Defendant acted under color of law

(3)     Plaintiff spoke on matters of public concern when she opposed sex discrimination, sexual harassment, a hostile work environment, and physical mistreatment of prisoners.  By example, in approximately May of 2018, she witnessed a witness physically abused by guards. It involved the prisoner protesting the way he was grabbed by guards. As Plaintiff watched, she was chastised by Major Prentice which included being ordered to leave the scene.  This incident she reported to Defendants, as she had and would

report others. Plaintiff suffered adverse actions which included false imprisonment as to passage doors not being opened for her in a reasonable period of time.

(3) Plaintiff's movement in the jail was frustrated to an extent that she was falsely imprisoned (as a result of Defendant IDOC's misconduct).

(4) Plaintiff did suffer harm and incurred damages.

(6) Plaintiff proximately caused the harm, injury, and damages.

(7) Plaintiff suffered harm to include deprivation of rights, pain and suffering; stigma; loss of income; humiliation; and garden variety stress.

WHEREFORE, and that there is sought, judgment against Defendants for actual, general, special, compensatory damages in an amount in excess of $200,000.00, and further demands judgment against Defendant for the costs of this action, including attorney's fees, and such other relief deemed to be just and equitable.

**\*Plaintiff hereby makes a demand for a Jury.**

DATED: SEPTEMBER 6, 2019
Respectfully Submitted,
s\Christopher Cooper, ESQ., Plaintiff's Counsel
Law Office of Christopher Cooper, INC.
79 West Monroe Street, Suite 1213, Chicago, IL 60603
Tel: 312 473 2968; FAX: 866 334 7458; E-Mail: cooperlaw3234@gmail.com

Pursuant to 28 U.S.C. 1746, I, JIMIA STOKES, being duly sworn on oath, state that I have read the foregoing Complaint and that I know the contents thereof to the best of my ability as a non-lawyer, and the same are true and correct to the best of my knowledge.

Plaintiff's Signature: s\JIMIA STOKES, 9-6-18